IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| MAX MERCER[1], | § | |
| | § | No. 250, 2019 |
| Respondent Below, | § | |
| Appellant, | § | |
| | § | |
| v. | § | Court Below – Family Court |
| | § | of the State of Delaware |
| DONNA MERCER, | § | |
| | § | File No. CS16-02776 |
| Petitioner Below, | § | Petition Nos. 17-05948 |
| Appellee. | § | 17-06054 |

Submitted: February 28, 2020
Decided: April 28, 2020

Before **SEITZ**, Chief Justice; **TRAYNOR** and **MONTGOMERY-REEVES**, Justices.

## O R D E R

Upon consideration of the parties' briefs and the record on appeal, it appears to the Court that:

(1) The appellant ("Ex-Husband") filed this *pro se* appeal from a Family Court order resolving matters ancillary to his divorce from the appellee ("Ex-Wife"). We conclude that the Family Court did not abuse its discretion and affirm the judgment of the Family Court.

---

[1] The Court previously assigned pseudonyms to the parties pursuant to Supreme Court Rule 7(d).

(2) The parties divorced on May 8, 2017. The Family Court held a hearing on ancillary matters during three days in March, May, and September 2018. Both parties were represented by counsel. After requesting supplemental, post-hearing submissions from the parties regarding certain matters, on April 4, 2019, the Family Court issued a detailed order resolving the parties' disputes concerning property division and alimony. Ex-Husband filed a motion for reargument, which the Family Court denied in another detailed order dated May 14, 2019.

(3) In his *pro se* appeal, Ex-Husband raises several claims of error regarding the Family Court's resolution of the ancillary matters. After careful consideration of Ex-Husband's arguments, we conclude that the judgment of the Family Court should be affirmed on the basis of the Family Court orders dated April 4, 2019 and May 14, 2019, and for the reasons discussed below.

(4) This Court's review of an appeal from the Family Court extends to a review of the law and the facts, as well as a review of the judge's inferences and deductions.[2] This Court will not disturb the Family Court's rulings if its findings of fact are supported by the record and its explanations, deductions, and inferences are the product of a logical reasoning process.[3] We review legal determinations *de*

---

[2] *Garrison v. Downing*, 2020 WL 913736 (Del. Feb. 26, 2020).
[3] *Id.*

2

*novo*.[4]  If the Family Court has correctly applied the law, our standard of review is abuse of discretion.[5]

(5)    Ex-Husband's first argument on appeal is that the Family Court judge was biased against him.  Specifically, he contends that the judge demonstrated bias by requesting post-trial submissions regarding certain issues, rather than deciding those issues on the basis of facts presented at the hearing.  We conclude that this argument is not supported by the record.  As an initial matter, it is a relatively common occurrence for trial judges in civil matters to request supplemental, post-trial submissions concerning matters at issue in the case.  Where, as here, the court identified issues about which it needed additional information in order to make a ruling and gave each party an opportunity to address those issues in a supplemental submission, we can find no basis to conclude that the judge was biased.[6]  Moreover, the fact that a judge rules adversely to a party does not establish bias against that party.[7]  Indeed, the Family Court made rulings adverse to each party in this case, which further supports the conclusion that the judge did not act in a biased manner.[8]

---

[4] *Id.*

[5] *Id.*

[6] *See generally Flowers v. State*, 2012 WL 3865134, at *2 (Del. Sept. 5, 2012) (stating that to establish bias, a party must demonstrate that a judge has "a personal, rather than a judicial, bias against him").

[7] *Painter v. Painter*, 2019 WL 6320455, at *2 (Del. Nov. 25, 2019).

[8] *Id.*

(6)     Ex-Husband also argues that the Family Court erred by awarding Ex-Husband and Ex-Wife each 50% of the value of the marital residence. When the parties married, they lived in a small structure on a lot that was owned by Ex-Husband's father. In 1996, Ex-Husband's father gifted to Ex-Husband a 50% interest in the lot. The parties later obtained a mortgage and a home equity line of credit to build and later improve a marital home on the lot. The cumulative balance of those loans was $188,229 for purposes of the property division.

(7)     The parties agreed that that the value of the home was $375,000, that the lot value was an additional $75,000, and that the lot was not marital property that was subject to division by the Family Court. They disagreed about what portion of the $375,000 value of the home was subject to division by the Family Court. Ex-Husband contended that, because his father could demand partition of the property, Ex-Husband and Ex-Wife had, at most, an interest in 50% of the value of the property as a whole (the home and the lot), or $225,000. He also argued that the value of his non-marital interest in the lot ($37,500) should be subtracted from that interest, making the marital interest in the property $187,500. Because the loan balances exceeded $187,500, Ex-Husband's position would result in negative equity, meaning that Ex-Wife would not be awarded any value for the marital residence in the property division. Ex-Wife argued that the entire $375,000 value of

4

the home was subject to division. She did not seek compensation for the value of the lot.

(8) The Family Court held that the entire value of the home, $375,000, was marital and subject to division, because Ex-Husband and Ex-Wife had jointly incurred the loans that financed the construction and improvements, and Ex-Husband's father had not contributed. The court rejected Ex-Husband's argument that the value of the home should not be divided as marital property because his father could seek partition, because the court determined that in a partition action the father would not be entitled to 50% of the value of the property as a whole (the home and the lot). Citing various authorities, the Family Court determined that in a partition action, Ex-Husband would be entitled to compensation for the value of the improvements made at his and Ex-Wife's expense.[9] The court therefore divided the entire value of the home, minus the loan balances, between Ex-Husband and Ex-Wife.

(9) On appeal, Ex-Husband argues that the Family Court's ruling erroneously created a constructive trust for Ex-Wife on the whole property, half of

---

[9] *See Wilson v. Lank*, 107 A. 772, 773 (Del. Orphans' Ct. 1919) (discussing a cotenant's right in a partition action to compensation for improvements made to property). *See also Estate of Weber v. Weber*, 2014 WL 589714, at *5 (Del. Ch. Feb. 17, 2014) ("The law with respect to improvements to property by cotenants is equally clear. Under 12 *Del. C.* § 733, the Court may, as a matter of equity, take into consideration improvements by one cotenant and, to the extent those improvements have enhanced the value of the property, the improving cotenant will be compensated proportionally out of the proceeds of the sale." (internal quotations omitted)).

which belongs to Ex-Husband's father, not to Ex-Husband. A constructive trust is an "implied" trust that a court imposes over property when a defendant's fraudulent, unfair, or unconscionable conduct causes him to be unjustly enriched at the expense of another to whom he owed some duty.[10] The Family Court did not impose a constructive trust here. Rather, it exercised its "broad discretion to divide property in an equitable manner,"[11] considered the legal effect of Ex-Husband's father's ownership of one-half of the lot and his right to seek partition, and ordered that Ex-Husband would retain the property while the value of the home and the attendant debt would be evenly divided between Ex-Husband and Ex-Wife in the overall property division. The court's order also recognized the expectation that Ex-Wife would disclaim any interest in the property that she might be found to have. The court did not impose a constructive trust on the property, and we find no reversible error concerning the court's division of the value of the marital residence.

(10) Ex-Husband next argues that the Family Court erroneously valued Ex-Husband's business assets and allocated various debts among the parties. Specifically, he contends that the Family Court recognized that both parties violated the preliminary injunction,[12] but that the court penalized Ex-Husband more harshly

---

[10] *Adams v. Jankouskas*, 452 A.2d 148, 151-52 (Del. 1982).

[11] *Glanden v. Quirk*, 128 A.3d 994, 1001 (Del. 2015).

[12] *See* 13 *Del. C.* § 1509 (providing for issuance, upon filing of a divorce petition, of a preliminary injunction enjoining the parties from transferring, encumbering, concealing, or disposing of property except in the usual course of business or for the necessities of life, and requiring accounting for extraordinary expenditures).

6

for his violations than it penalized Ex-Wife for hers. After careful consideration, we conclude that the Family Court's decisions regarding the valuation of the business assets and the allocation of debts among the parties, as well as its determinations regarding the effect of and remedy for the parties' respective violations of the preliminary injunctions, turned on its assessment of the credibility of the witnesses and were the result of an orderly and logical deductive process. They therefore will not be disturbed on appeal.[13]

(11) Ex-Husband also contends that the Family Court erred by determining that Ex-Wife had redeemed $13,929.68 of savings bonds when the preliminary injunction was in effect, rather than $16,753.04, as Ex-Husband asserted. As the Family Court explained, the documentary evidence submitted at trial that identified the redeemed bonds appeared to contain some duplicate entries. The court did not abuse its discretion by relying on the documentary evidence and eliminating the duplicate entries, rather than accepting Ex-Wife's testimony at trial, which simply adopted the total from the document that included the duplicate entries.

(12) Next, Ex-Husband argues that the Family Court erred when it valued a truck that Ex-Husband sold while the ancillary proceedings were pending. The Family Court determined that Ex-Husband's testimony regarding the amount he received for the sale of the truck was not credible, in part because it was inconsistent

---

[13] *Wheatley v. Wheatley*, 1996 WL 145975 (Del. Mar. 21, 1996).

with documents submitted into evidence.  The court therefore used the NADA value that Ex-Wife submitted to determine the value of the truck, consistent with a provision of the parties' joint pretrial stipulation that NADA values would be used to value vehicles; the court also determined that to the extent the NADA valuation submitted by Ex-Wife included features that the truck Ex-Husband sold did not have, that was the direct result of Ex-Husband's failure to disclose the existence and sale of the truck, thus depriving Ex-Wife of an opportunity to inspect it.  We find no abuse of discretion in the Family Court's ruling on this issue.[14]

(13)   Ex-Husband also argues that the Family Court erred by awarding Ex-Wife her entire pension, rather than dividing it under the Cooper formula,[15] because the parties' joint pretrial stipulation indicated that the parties intended the marital portion of the pension to be divided according to the Cooper formula.  We find no reversible error.  The Family Court "has broad discretion in disposing of pension plan benefits."[16]  Here, the court awarded Ex-Wife her pension plan in lieu of alimony, because both parties had a budget deficit, and after weighing the equities in light of the other property that each party was receiving in the property division. Moreover, the Family Court correctly recognized that it was not clear in the joint

---

[14] *See Kostic-Lahlou v. Kostic*, 2006 WL 3461437 (Del. Dec. 1, 2006) (finding no abuse of discretion in Family Court's valuation of a car).

[15] *See Jerry L.C. v. Lucille H.C.*, 448 A.2d 223, 225 (Del. 1982) (discussing formula for division of employer pension).

[16] *Id.* (internal quotations omitted).

pretrial stipulation that the parties agreed that Ex-Wife's pension would be divided using the Cooper formula because that statement was among several in the stipulation that were marked by an asterisk indicating that "Wife has not agreed to these issues." Ex-Husband has not presented on appeal any additional information, such as a transcript of the hearing, to support his argument that the parties had agreed on this issue.[17]

(14) Finally, Ex-Husband argues that the Family Court erred (i) when it awarded Ex-Wife two unimproved lots that are located near the marital residence and an adjoining rental property that the court awarded to Ex-Husband; and (ii) in its valuation of an RV that the parties owned. We find no error of law or abuse of discretion on these issues, and we affirm on the basis of the Family Court orders dated April 4, 2019 and May 14, 2019.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is AFFIRMED.

BY THE COURT:

*/s/ Tamika R. Montgomery-Reeves*
Justice

---

[17] *See generally Mahan v. Mahan*, 2007 WL 1850905 (Del. June 28, 2007) (affirming in appeal from Family Court where appellant did not provide transcripts that would enable appellate review of his claims of error).